731 P.2d 645

**Robert CASSEY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**L.B.J. Institutional Supply, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

No. 1 CA–IC 3565.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 13, 1987.

Taylor & Schaar by Donald F. Schaar, Phoenix, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, The Indust. Com'n of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Christopher E. Kamper, Phoenix, for respondent employer and carrier.

MEYERSON, Judge

This is a special action review of a decision upon review by the Industrial Commission, closing petitioner's (claimant's) industrial claim and finding his condition to be stationary without permanent impairment. The issue presented is whether the administrative law judge (judge) erred in finding no permanent impairment solely because neither expert witness was able to rate claimant's degree of impairment under the American Medical Association's "Guides to the Evaluation of Permanent Impairment" (Guides). The judge found, however, that claimant was unable to return to his for-

mer employment as a result of his industrial injury.

Claimant Robert Cassey was a delivery truck driver who injured his lower back while lifting a truck ramp. His injury was diagnosed by Dr. Whisler, an orthopedic surgeon, as thoracolumbar sprain, chronic. Dr. Whisler testified that because of claimant's chronic muscular pain from the injury, he cannot return to regular work. Dr. Whisler also testified that no further treatment would be helpful; thus, the condition was stationary. Dr. Whisler was unable to rate the degree of impairment under the Guides; he stated that the Guides do not cover a chronic sprain. Because claimant has no evidence of neurological impairment and has full range of motion, Dr. Whisler testified the Guides are inapplicable as these are the only two criteria the Guides use to determine impairment.

A second medical expert, Dr. Bair, testified that claimant's injury is stationary, but that claimant could return to regular work. Dr. Bair also stated that the Guides do not cover a possible soft tissue injury with pain. The Guides only measure neurological deficit and reduced range of motion; neither criterion is present in claimant's case.

Claimant testified that he had no previous back problems prior to the injury. He stated that his back problems have continued to the present and that he is unable to mow his lawn, lift his grandchildren, or run his vacuum without experiencing pain.

The judge found that claimant could not return to his former employment because of his pain, but held that the claimant was not permanently impaired because neither of the two experts had rated the impairment. The judge stated,

"it is not necessary that the applicant be ratable under the AMA Guidelines ... but it *is* necessary that a rating of impairment of some sort be made, and if none is made, then the nature and extent of an impairment cannot properly be considered by an ALJ pursuant to the provisions of A.R.S. § 23–1044(D)."

*See generally Desert Insulations, Inc. v. Industrial Comm'n*, 134 Ariz. 148, 654 P.2d 296 (App.1982).

■ Claimant argues that *Desert Insulations* is inapplicable to this case and that his inability to return to work because of industrially-related pain established permanent impairment. We agree and set aside the award finding no permanent impairment.

The statutory provision applicable here is A.R.S. § 23–1044(D), which provides:

In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section [providing disability compensation for unscheduled permanent partial disability], consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, *the nature and extent of the physical disability*, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of the injury.

(Emphasis added.) The Industrial Commission has promulgated Rule 113, A.C.R.R. R4–13–113(D), which provides in part:

If upon discharge from treatment the physician finds that the employee has sustained an impairment of function as a result of the injury, he shall so state in his report. Any rating of the percentage of the functional impairment shall be in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in 'Guides to the Evaluation of Permanent Impairment'. It shall include a clinical report in sufficient detail to support the percentage ratings assigned.

In a recent line of cases, the Arizona courts have addressed the applicability of the Guides to findings of permanent impairment. The supreme court has held that the Guides "are not to be blindly applied regardless of a claimant's actual physical condition;" rather, they are only a valid guideline where the stated percentage

" 'truly reflects the claimant's loss.' " *W.A. Krueger Co. v. Industrial Comm'n,* 150 Ariz. 66, 68, 722 P.2d 234, 236 (1986). If the Guides do not apply when medical evidence has established a permanent impairment, the judge may use his discretion and make findings independent of the Guide's recommendations. *Id.* Similarly, in another recent case involving the determination of disability for a scheduled injury, the supreme court stated that where the Guides are inapplicable, the judge must use other factors to determine the degree of impairment. *Gomez v. Industrial Comm'n,* 148 Ariz. 565, 569, 716 P.2d 22, 26 (1986). In another case, the supreme court noted that when the Guides do not accurately assess a claimant's impairment because no objective observations are available, "sound clinical judgment" must be substituted in evaluating permanent impairment. *Adams v. Industrial Comm'n,* 113 Ariz. 294, 295, 552 P.2d 764, 765 (1976).

Perhaps the closest case factually to the present one is *Smith v. Industrial Comm'n,* 113 Ariz. 304, 552 P.2d 1198 (1976). In *Smith,* the supreme court held where there is only subjective evidence of pain and the medical testimony establishes that the pain is a permanent impairment, the Guides need not be used to rate a condition to which they do not apply. The issue not addressed, however, in *Smith* or in the other previous cases, is whether the inability of the testifying physicians to rate the claimant's impairment under either the Guides or under any alternative method precludes a finding of permanent impairment as a matter of law.

Here, the judge relied on *Desert Insulations* for the proposition that some rating is necessary in order to find a permanent impairment. This reliance was misplaced, because *Desert Insulations* is factually distinguishable from the instant case. In *Desert Insulations,* the medical testimony established that the employee's injury, a cervical neck sprain, was ratable under the Guides. The medical expert testified that he had not "looked it up in the AMA guide," but that "might be a good place to utilize that, because he does have restric-

tion of motion, which is what the AMA goes on." 134 Ariz. at 151, 654 P.2d at 299. The court held that because the impairment was ratable under the Guides, the claimant's impairment needed to be rated in order to establish a permanent impairment. *Id.* at 152, 654 P.2d at 300. The court clearly stated that "A.C.R.R. R4–13–113(D) does not require a rating of impairment, but requires that any such rating, if made, must be made under the AMA guidelines." *Id.* at 151, 654 P.2d at 299. Thus, *Desert Insulations* does not support the judge's finding that there is no permanent impairment because the medical witnesses were unable to rate the impairment.

In the instant case, both medical witnesses testified that claimant's injury is not ratable under the Guides, or under any other established criteria. Dr. Whisler also testified, however, that in his opinion the claimant was unable to return to his job "because of the chronic nature of his back problem." He testified that this inability to return to work was causally related to the industrial accident and was permanent. In his award, the judge adopted Dr. Whisler's opinion that the claimant was permanently precluded from returning to work because of his industrial injury.

In spite of this uncontradicted testimony that the Guides did not apply to claimant's impairment, and despite Dr. Whisler's testimony that the claimant's impairment was not ratable under any known method, the judge found as follows:

> While the facts in this case established that the applicant is unable to return to his former employment because of pain caused by his industrial injury, the law appears to be that in the absence of a statement by an expert medical witness that the applicant has sustained some degree of permanent impairment caused by his industrial injury, the applicant is not entitled to be considered permanently disabled for purposes of calculating whether or not he is entitled to unscheduled permanent partial disability compensation.

We find this interpretation of the law to be erroneous.

 The assessment of the effects of a permanent impairment on earning capacity is accomplished through a bifurcated procedure. First, claimant must establish the existence and degree of a permanent impairment; second, claimant must establish that the impairment diminishes his earning capacity. *Hunter v. Industrial Commission*, 130 Ariz. 59, 633 P.2d 1052 (App.1981). Normally, the degree of the impairment can be assessed independently of its resulting loss of earning capacity. Impairment is usually a question of medical fact, while loss of earning capacity is a question of law. *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978). In some cases, however, the claimant must establish the disabling effect of the industrial injury in order to establish a permanent impairment. This is true when residual pain is the permanent injury because pain is compensable as an impairment only when it is disabling. *Smith v. Industrial Commission*, 113 Ariz. 304, 552 P.2d 1198 (1976). Thus, in pain cases, the line between the medical question and the legal question is blurred. Because of the intertwined issues when pain is the only residual permanent injury, the claimant must be allowed to introduce evidence of disability in order to show impairment. During the first stage, the claimant meets his burden of proof in showing the existence of a permanent impairment if he shows that the pain is caused by his industrial injury and results in his permanent inability to return to his former work. *Cf.*

*Hunter v. Industrial Commission*, 130 Ariz. 59, 633 P.2d 1052 (App.1981) (claimant's medical testimony established permanent impairment caused by meat wrapper's asthma, even though condition was not ratable under the Guides). Once this initial burden has been met, claimant is then entitled to go through the second stage, during which he must show that the pain resulted in lost earning capacity. The claimant cannot be barred from proceeding to this second stage by his failure to provide a rating of impairment when none is applicable.

In this case, claimant met his burden of showing a permanent impairment. Both medical experts testified that the impairment was not ratable under the Guides. Dr. Whisler testified that the impairment was not ratable under any method with which he was familiar. The judge found that the claimant had a permanent industrial related condition that prevents him from returning to work. Having found the foregoing to be true, it was error for the judge to conclude that claimant had suffered no permanent impairment.

Award set aside.

SHELLEY and JACOBSON, JJ., concur.